IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DESHAWN STALLSWORTH,<br><br>     Petitioner,<br><br>   vs.<br><br>D. K. SISTO, Warden, California State<br>Prison, Solano,<br><br>     Respondent. | No. 2:07-cv-02466-JKS<br><br>MEMORANDUM DECISION |

Deshawn Stallsworth, a state prisoner appearing *pro se*, has filed a Petition for Habeas

Corpus Relief Under 28 U.S.C. § 2254.  Stallsworth is currently in the custody of the California

Department of Corrections and Rehabilitation, incarcerated at the California State Prison, Solano.

Respondent ("State") has answered, and Stallsworth has replied.

I.  BACKGROUND/PRIOR PROCEEDINGS

Following the entry of a guilty plea in December 1989, Stallsworth was convicted in the

San Diego County Superior Court of Murder in the First Degree (Cal. Penal Code, § 187).[1]

Stallsworth was sentenced to an indeterminate prison term of 25 years to life.  Stallsworth does

not challenge his conviction or sentence in these proceedings.  In January 2006 Stallsworth made

his first appearance before the California Board of Parole Hearings ("Board"), which denied him

parole.  Stallsworth timely petitioned the San Diego County Superior Court for habeas corpus

---

[1] One count of attempted murder in the first degree (Cal. Penal Code, §§ 664, 187(a)) and
the allegations of firearm use (Cal. Penal Code, § 12022.5(a)) were dismissed.

relief.  The San Diego County Superior Court denied his petition in an unreported, reasoned

opinion.  Stallsworth then filed a petition for habeas corpus relief in the California Court of

Appeal, Fourth Appellate District, which denied his petition in an unreported, reasoned decision.

Stallsworth timely filed a petition for review in the California Supreme Court, which was

summarily denied without opinion or citation to authority on June 20, 2007.  Stallsworth timely

filed his petition for relief in this Court on November 14, 2007, asserting the same grounds as

raised in his state habeas proceedings.

The facts underlying Stallsworth's commitment offense, as recited by the California

Court of Appeal are:

> The facts as recited at the hearing are:  On August 8, 1989, Stallsworth and other Emerald Hills gang members discussed robbing a known drug house.  They drove to the drug house in Stallsworth's car to purchase marijuana but were unsuccessful.  They saw a group of individuals standing nearby and some of the individuals gave them "mean looks."  Stallsworth's group drove by three times.  On the third pass, Stallsworth opened fire with a .22 caliber rifle and shot 16-year-old Armando Bracamontes in the head, killing him.  Stallsworth shot 21-year-old David Sanchez in the leg.  Stallsworth was about five feet away from the victims when he fired.  He was high on malt liquor and marijuana at the time of the shooting.  Stallsworth joined the gang at age 14 and was 17 years old at the time of the shooting.[2]

The Board found that "Stallsworth was not suitable for parole and would pose an

unreasonable risk of danger to society or a threat to public safety if released from prison."[3]  In

upholding that decision, the California Court of Appeal held:  "The Board based its decision on

---

[2] Docket No. 11-6, p. 2.

[3] Docket No. 11-6, p. 2.

the facts of the crime, Stallsworth's gang membership, his misconduct in prison, his limited participation in beneficial self-help programs and his need for additional programming."[4]

After briefing was completed, the United States Court of Appeals for the Ninth Circuit, sitting en banc, decided *Hayward v. Marshall*.[5]  At Docket No. 16 this Court entered its Order directing the parties to file supplemental briefs addressing the *Hayward* decision, in particular that "[t]he prisoner's aggravated offense does not establish current dangerousness 'unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state' supports the inference of dangerousness."[6]  The Court also directed the parties to consider two Ninth Circuit Decisions applying *Hayward*.[7]  Both parties have submitted supplemental briefing.

## II.  GROUNDS RAISED/DEFENSES

In his Petition, Stallsworth raises five grounds for relief:  (1) the Board's four-year denial of parole violated his plea agreement; (2) the Board impermissibly relied on the nature of the offense; (3) the Board relied upon disciplinary proceedings in violation of the Board's regulations; (4) the Board's insistence upon his becoming a true adherent to the tenets of Alcoholics Anonymous violates his right of religious freedom under the First Amendment; and

---

[4] Docket No. 11-6, p. 2.

[5] 603 F.3d 546 (9th Cir. 2010) (en banc).

[6] *Hayward*, 603 F.3d at 562.

[7] *Pearson v. Muntz*, 606 F.3d 606 (9th Cir. 2010) (per curiam), and *Cooke v. Solis*, 606 F.3d 1206 (9th Cir. 2010).

(5) the Board's instruction to upgrade his occupational skills violated the Board's regulations. The State raises no affirmative defense.[8]

### III.  DISCUSSION

In his second ground, Stallsworth challenges the refusal of the Board to grant him a parole on the basis that the decision was based primarily, if not wholly, upon the nature of his commitment offense.  Although the California Court of Appeal provided reasoning for rejecting Stallsworth's other grounds, i.e., violation of the plea agreement, consideration of factors in violation of the regulations, and his First Amendment right, the court's treatment of the second ground presented was a cryptic "[t]he Board's decision to deny parole is based upon some evidence."[9]  The Court of Appeal does not identify those factors that support that conclusion or refer to the evidence in the record that supports any factor relevant to that conclusion.

"When habeas courts review the 'some evidence' requirement in California parole cases, both the subsidiary findings and the ultimate finding of some evidence constitute factual findings."[10]  In its Order requesting supplemental briefing, this Court directed the State to "specifically identify those characteristics, other than the underlying commitment offense, that support a finding that release of the Petitioner to parole status poses a current threat to public safety, and point to the specific evidence in the record that supports that determination."[11]  In its response, the State argues that, because *Hayward* was wrongly decided and represents circuit

---

[8] *See* Rules—Section 2254 Cases, Rule 5(b).

[9] Docket No. 11-6, p. 3.

[10] *Cooke*, 606 F.3d at 1216.

[11] Docket 16, p. 2.

law, not the law as established by the Supreme Court, this Court need not follow *Hayward* or the Ninth Circuit cases applying *Hayward*. The State, asserting that the order requiring that the evidence supporting the finding that the release of Stallsworth to parole status poses a current threat to public safety be identified is an improper question, declined to provide the required information.[12] This Court disagrees. This Court, a district court, is bound by earlier published decisions of the Ninth Circuit until overruled or undermined by higher authority, e.g., an en banc decision of the Ninth Circuit, a Supreme Court decision, or subsequent legislation.[13] This has not occurred. This Court notes that if, as the State contends, *Hayward* was incorrectly decided, the appropriate remedy is to file a petition for a *writ of certiorari* in the Supreme Court within 90 days of the date the petition for rehearing in *Hayward* was denied.[14] The 90-day period began to run June 2, 2010, when the Ninth Circuit denied Hayward's petition for a rehearing.[15] As the time for filing a petition for *certiorari* had not yet expired, if the State contemplated seeking *certiorari*, the State could have requested this Court to grant additional time to comply with the

---

[12] If this were a single instance, this Court would be inclined to ascribe the position taken as being that of an inexperienced subordinate who did not have a full understanding or appreciation for the rules of federal jurisprudence. Unfortunately, this is not such an isolated incident. This Court has received several similar responses to its order in other parole cases that were held in abeyance pending the en banc decision in *Hayward*, e.g., *Walker v. Kramer*, Case No. 2:07-cv-00803-JKS, *Singer v. Sisto*, Case No. 2:08-cv-00048-JKS, *Dewey v. Sisto*, Case No. 2:08-cv- 00580-JKS, and *Feliz v. Sisto*, Case No. 2:08-cv-01508-JKS, of which this Court takes judicial notice. Fed. R. Evid. 201. Consequently, this Court must conclude that the position taken herein represents the official position of the State of California, acting through its Attorney General.

[13] *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc).

[14] Supreme Court Rule 13.

[15] *Hayward v. Marshall*, Ninth Circuit Case No. 06-55392, Docket No. 120, of which this Court takes judicial notice. Fed. R. Evid. 201.

Order.  Alternatively, the State could have preserved its arguments that *Hayward* was

erroneously decided for further appellate review, and still complied with the express terms of the

Order.  What the State could not do is what it did do in this case—ignore the clearly articulated

requirements of *Hayward* and decline to obey this Court's specific order.[16]  In so doing, even if

the Order was "improper," the State did so at its own peril.[17]

Because the State failed to identify those characteristics, other than the underlying

commitment offense, supporting a finding that Stallsworth presents a current threat to public

safety, or the evidence supporting that finding, this Court must assume that the State concedes no

such characteristic or evidence supporting any such characteristic exists.

---

[16] Indeed, as a result of the failure of the State to comply with this Court's Briefing Order,
the State appears to assume that this Court will mine the record to find sufficient evidence to
support the decision of the California Court of Appeal.  It is unquestionably the rule that the
burden of establishing a violation of a constitutional right sufficient to warrant habeas relief is
placed on the petitioner.  *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002); *see Wood v.
Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas
relief on the basis of little more than speculation with slight support").  That does not, however,
mean that the petitioner has the burden of proving a "negative," i.e., that something does not
exist.  The State should not expect a federal district court to mine the record to find the evidence
that would support a determination of whether the California judicial decision approving the
Board's decision rejecting parole was an unreasonable application of the California some
evidence requirement, or was based on an unreasonable determination of the facts in light of the
evidence, as required by *Hayward*.  This is particularly problematical in that it does not appear
from the face of the decision of the California Court of Appeal that what it cited as a basis for the
Board's decision logically supports a finding of a *present* threat of danger to society.

[17] *See Walker v. City of Birmingham*, 388 U.S. 307, 314 (1967) ("until its decision is
reversed for error by orderly review, either by itself or by a higher court, [a court's] orders based
on its decision are to be respected, and disobedience of them is contempt of its lawful authority,
to be punished.") (quoting *Howat v. State of Kansas*, 258 U.S. 181, 189-90 (1922)); *Celotex
Corp. v. Edwards*, 514 U.S. 300, 313 (1995) (same); *United States v. United Mine Workers of
America*, 330 U.S. 358, 293 (1947) (same).

This Court must decide the case on the law as it exists at the time it renders is decision, and if the law changes while the case is pending, this Court applies the new rule.[18]  Thus, although it establishes a new rule, the holding in *Hayward* is controlling.  In this case, this Court "need only decide whether the California judicial decision approving the [Board's] decision rejecting parole was an 'unreasonable application' of the California 'some evidence' requirement, or 'was based on an unreasonable determination of the facts in light of the evidence.'"[19]  By its reference to § 2254(d), the Ninth Circuit implicitly, if not explicitly, directed this Court to apply § 2254(d) to the decisions of the California Supreme Court using the same standards as are applied to the determination of the law as established by the United States Supreme Court.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."[20]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the

---

[18] *See Thorpe v. Housing Authority of City of Durham*, 393 U.S. 268, 281-82 (1969); *Lambert v. Blodgett*, 393 F.3d 943, 973 n.21 (9th Cir. 2004).

[19] *Hayward*, 603 F.3d at 563 (footnotes citing 28 U.S.C. § 2254(d) omitted).

[20] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

time of the relevant state-court decision."[21]  When a claim falls under the "unreasonable

application" prong, a state court's application of Supreme Court precedent must be objectively

unreasonable, not just incorrect or erroneous.[22]  The Supreme Court has made clear that the

objectively unreasonable standard is a substantially higher threshold than simply believing that

the state court determination was incorrect.[23]  Consequently, it appears that, under the mandate of

*Hayward*, this Court must canvas and apply California law as it existed at the time of the state

court decision to the facts in the record as presented to the state court.

The mandate in *Hayward* is that this Court must review the decisions of state courts

applying state law—in effect serving as a super-appellate court over state court decisions.  This is

in tension with the holdings of the Supreme Court.  It is a fundamental precept of dual federalism

that the states possess primary authority for defining and enforcing the criminal law.[24]  A

fundamental principle of our federal system is "that a state court's interpretation of state law,

including one announced on direct appeal of the challenged conviction, binds a federal court

sitting in habeas corpus."[25]  This principle applied to federal habeas review of state convictions

---

[21] *Williams*, 529 U.S. at 412.

[22] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[23] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[24] *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002); *see also Engle v. Isaac*, 456 U.S. 107, 119 (1982) (challenging the correctness of the application of state law does not allege a deprivation of federal rights sufficient for habeas relief); *Bell v. Cone,* 543 U.S. 447, 455 (2005) (a federal court may not lightly presume that a state court failed to apply its own law).

[25] *Bradshaw v. Richey,* 546 U.S. 74, 76 (2005); *see West v. AT&T,* 311 U.S. 223, 236
(continued...)

long before AEDPA.[26]  A federal court errs if it interprets a state legal doctrine in a manner that

directly conflicts with the state supreme court's interpretation of the law.[27]  It does not matter that

the state supreme court's statement of the law was dictum if it is perfectly clear and

unambiguous.[28]

At the time of the state court decision in this case, the California "some evidence" rule

was embodied in *Rosenkrantz* and *Dannenberg*.[29]  Subsequently, the California Supreme Court,

applying *Rosenkrantz* and *Dannenberg*, decided *In re Lawrence*[30] and *In re Shaputis*.[31]

In *Rosenkrantz*, the California Supreme Court held:

> [. . . .]  Due process of law requires that [the Board's] decision be
> supported by some evidence in the record.  Only a modicum of evidence is
> required.  Resolution of any conflicts in the evidence and the weight to be given
> the evidence are matters within the authority of the [Board].  [. . . .]  [T]he precise
> manner in which the specified factors relevant to parole suitability are considered
> and balanced lies within the discretion of the [Board] . . . .  It is irrelevant that a
> court might determine that evidence in the record tending to establish suitability
> for parole far outweighs evidence demonstrating unsuitability for parole.  As long
> as the [Board's] decision reflects due consideration of the specified factors as
> applied to the individual prisoner in accordance with applicable legal standards,

---

[25](...continued)
(1940) ("[T]he highest court of the state is the final arbiter of what is state law.  When it has
spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

[26] *See Mullaney v. Wilbur,* 421 U.S. 684, 691 (1975) ("state courts are the ultimate
expositors of state law").

[27] *See Bradshaw*, 546 U.S. at 76-78 ("Because the Sixth Circuit disregarded the Ohio
Supreme Court's authoritative interpretation of Ohio law, its ruling on sufficiency of the evidence
was erroneous.").

[28] *Id.* at 76.

[29] The Alameda County Superior Court cited *Rosenkrantz* in its decision.

[30] 190 P.3d 535 (Cal. 2008).

[31] 190 P.3d 573 (Cal. 2008).

the court's review is limited to ascertaining whether there is some evidence in the record that supports the [Board's] decision.[32]

The California Supreme Court then held:

> The nature of the prisoner's offense, alone, can constitute a sufficient basis for denying parole. (Citations omitted.)  Although the parole authority is prohibited from adopting a blanket rule that automatically excludes parole for individuals who have been convicted of a particular type of offense, the authority properly may weigh heavily the degree of violence used and the amount of viciousness shown by a defendant.  [. . . .]
>
> In some circumstances, a denial of parole based upon the nature of the offense alone might rise to the level of a due process violation—for example where no circumstances of the offense reasonably could be considered more aggravated or violent than the minimum necessary to sustain a conviction for that offense.  Denial of parole under these circumstances would be inconsistent with the statutory requirement that a parole date normally shall be set "in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public . . . ." (Pen.Code, § 3041, subd. (a).)  "The Board's authority to make an exception [to the requirement of setting a parole date] based on the gravity of a life term inmate's current or past offenses should not operate so as to swallow the rule that parole is 'normally' to be granted. Otherwise, the Board's case-by-case rulings would destroy the proportionality contemplated by Penal Code section 3041, subdivision (a), and also by the murder statutes, which provide distinct terms of life without possibility of parole, 25 years to life, and 15 years to life for various degrees and kinds of murder. (Pen. Code, § 190 et seq.)  [¶]  Therefore, a life term offense or any other offenses underlying an indeterminate sentence must be particularly egregious to justify the denial of a parole date." ( Citation omitted.)[33]

In *Dannenberg* the California Supreme Court explained:

> [. . . .]  So long as the Board's finding of unsuitability flows from pertinent criteria, and is supported by "some evidence" in the record before the Board [citing *Rosenkrantz*], the overriding statutory concern for public safety in the individual case trumps any expectancy the indeterminate life inmate may have in a

---

[32] *Rosenkrantz*, 59 P.3d at 218.  Quoted with approval in *Shaputis*, 190 P.3d at 585.

[33] *Id.* at 222; *see Shaputis*, 190 P.3d at 584-85 ("The record supports the Governor's determination that the crime was especially aggravated *and*, importantly, that the aggravated nature of the offense indicates that the petitioner poses a current risk to public safety." (emphasis in the original)).

term of comparative equality with those served by other similar offenders.
Section 3041 does not require the Board to schedule such an inmate's release
when it reasonably believes the gravity of the commitment offense indicates a
continuing danger to the public, simply to ensure that the length of the inmate's
confinement will not exceed that of others who committed similar crimes.[34]

The California Supreme Court then held:

>     Thus, there clearly was "some evidence" (citing *Rosenkrantz*) to support
> the Board's determination that Dannenberg's crime was "especially callous and
> cruel," showed "an exceptionally callous disregard for human suffering," and was
> disproportionate to the "trivial" provocation.  Accordingly, under *Rosenkrantz,* the
> Board could use the murder committed by Dannenberg as a basis to find him
> unsuitable, for reasons of public safety, to receive a firm parole release date.[35]

The Board must, however, "point to factors beyond the minimum elements of the crime

for which the inmate was committed" that demonstrate the inmate will, at the time of the

suitability hearing, present a danger to society if released.[36]  The Board "may credit evidence

suggesting the inmate committed a greater degree of the offense than his or her conviction

evidences."[37]  In *Lawrence*, however, the California Supreme Court rejected the argument "that

the aggravated circumstances of a commitment offense inherently establish current

dangerousness," holding:

>  "[W]e conclude that although the Board and the Governor may rely upon the
> aggravated circumstances of the commitment offense as a basis for a decision
> denying parole, the aggravated nature of the crime does not in and of itself
> provide some evidence of *current* dangerousness to the public unless the record
> also establishes that something in the prisoner's pre- or post-incarceration history,
> or his or her current demeanor and mental state, indicates that the implications
> regarding the prisoner's dangerousness that derive from his or her commission of

---

[34] *Dannenberg*, 104 P.3d at 795.

[35] *Id.* at 803.

[36] *Id.* at 786-87, 802-803; *see Rosenkrantz*, 59 P.3d at 222.

[37] *Dannenberg*, 104 P.3d at 803 n.16 (citing *Rosenkrantz*, 59 P.3d at 219).

the commitment offense remain probative to the statutory determination of a
continuing threat to public safety."[38]

This is the clarification upon which *Hayward*, *Pearson*, and *Cooke* rely, and it was the language

in *Lawrence* to which this Court alluded in its Order, which the State declined to address.

> With respect to the underlying commitment offense, the applicable regulation provides:
>
> (1) Commitment Offense.  The prisoner committed the offense in an especially
> heinous, atrocious or cruel manner. The factors to be considered include:
>       (A) Multiple victims were attacked, injured or killed in the same or
> separate incidents.
>       (B) The offense was carried out in a dispassionate and calculated manner,
> such as an execution-style murder.
>       (C) The victim was abused, defiled or mutilated during or after the
> offense.
>       (D) The offense was carried out in a manner which demonstrates an
> exceptionally callous disregard for human suffering.
>       (E) The motive for the crime is inexplicable or very trivial in relation to
> the offense.[39]
>
> The evidence supports a finding that this case falls with the scope of (1)(A) and (E).

Under California law, a court neither re-weighs the evidence nor substitutes it's discretion for

that of the Governor.  Judicial review of a decision denying parole is "extremely deferential."[40]

Thus, under *Rosenkrantz* and *Dannenberg*, this Court could not say that the decision of the

California Court of Appeal was contrary to, or involved an unreasonable application of

California law at the time it was decided, or was based on an unreasonable determination of the

facts in light of the evidence.  Because *Hayward*, *Pearson*, and *Cooke* require that *Lawrence* and

---

[38] 190 P.3d at 554-55; *see Cooke*, 606 F.3d at 1214.

[39] Cal. Code. Regs., tit. 15, § 2402(c).

[40] *Rosenkrantz*, 59 P.3d at 210.

*Shaputis* be applied, the decision of the California Court of Appeal in this case was contrary to,

or involved an unreasonable application of California law.

While the record in this case might support an argument that the denial of Stallsworth's

parole can be reconciled with *Cooke* and *Pearson*, the State has rejected the opportunity this

Court gave it to make that argument.  Instead, the State decided to stand on its position that

*Hayward*, *Pearson*, and *Cooke* were wrongly decided and apparently void.

The Board found that Stallsworth's crime was atypical and a response to a trivial

provocation.  This would be sufficient under *Rosenkrantz* and *Dannenberg*.  What the Board did

not do, and the State expressly declined to address, is explain how events ending in 1989 show

that Stallsworth presented a significant risk to public safety in 2006, rendering its determination

of current dangerousness insufficient under *Lawrence* and *Shaputis*.  Thus, under *Hayward*,

*Pearson*, and *Cooke*, this Court is compelled to find that the Board's denial of parole violated

Stallsworth's liberty interest protected by the Due Process Clause of the Fourteenth

Amendment.[41]  This Court, having determined that Stallsworth is entitled to relief under his

second ground, finds it unnecessary to reach the other grounds raised by Stallsworth.[42]

---

[41] In reaching this conclusion this Court is mindful of the following significant problems:
(1) the applicability of *Lawrence* and *Shaputis* to cases in which the state court decision became
final prior to August 21, 2008; and (2) the appropriate scope of review of the application by the
California courts of the California "some evidence" rule by federal courts in federal habeas
proceedings under 28 U.S.C. § 2254(d).  In other words, to what extent may subsequent
California cases modify the "liberty interest" established by California law and recognized in
*Hayward*, *Pearson*, and *Cooke*.

[42] It appears from the record that Stallsworth has yet to serve his minimum term.  Even
assuming he was in custody from the time of the offense (August 1989) and was given credit for
the time served prior to his conviction in December 1989, his minimum term does not expire
until August 2014.  There is no authority for the proposition that a state prisoner has a

(continued...)

IV.  CONCLUSION/ORDER

Stallsworth is entitled to relief under the second ground raised in his Petition.

Accordingly,

**IT IS HEREBY ORDERED THAT** the Petition for a Writ of Habeas Corpus under 28

U.S.C. § 2254 is **GRANTED**.

**IT IS FURTHER ORDERED THAT** the denial of parole is vacated and this matter is

remanded to the California Board of Parole Hearings for further proceedings consistent with the

decisions of the California Supreme Court in *In re Lawrence*, 190 P.3d 535 (Cal. 2008), and *In re*

*Shaputis*, 190 P.3d 573 (Cal. 2008),[43] as interpreted by *Hayward v. Marshall*, 603 F.3d 546 (9th

Cir. 2010) (en banc), *Pearson v. Muntz*, 606 F.3d 606 (9th Cir. 2010) (per curiam), *Cooke v.*

*Solis*, 606 F.3d 1206 (9th Cir. 2010), and *Pirtle v. California Board of Prison Terms*, 611 F.3d

1015 (9th Cir. 2010).

---

[42](...continued)
constitutionally protected right, under any theory, to a parole before the end of his minimum
term.  The State, by failing to raise this point in its answer and refusing to comply with this
Court's Order, has not raised this point, and it is therefore deemed waived.  This Court also
recognizes that the court in *Hayward* ultimately affirmed the denial of parole.  The California
Court of Appeal also noted Stallsworth's poor institutional adjustments and limited participation
in programs, which, depending upon a development of the record might justify *Hayward*.  The
Attorney General and his subordinates know the record in the case.  They also know the Ninth
Circuit's decision in *Hayward* and the California Supreme Court decisions in *Lawrence* and
*Shaputis*.  If the record in this case could be reconciled with the cases and the denial of parole,
competent counsel would have so argued.  Because the Attorney General is competent counsel,
the State's failure to develop the argument lends support to only one conclusion:  that the record
will not support a finding of present dangerousness.

[43] *See In re Prather*, 234 P.3d 541, 550-54 (Cal. 2010); *Haggard v. Curry*, --- F.3d ---,
2010 WL 4978842 (9th Cir. Dec. 9, 2010).

**IT IS FURTHER ORDERED THAT**, if the Board of Parole Hearings has not held a hearing within 120 days of the date of entry of this Order, the Secretary, California Department of Corrections and Rehabilitation, must release Bowie to parole status.

**IT IS FURTHER PROVIDED THAT** nothing in this Order is intended to, nor may it be construed as, restricting or otherwise inhibiting, directly or indirectly, the authority of the Secretary, California Department of Corrections and Rehabilitation, to set restrictions or conditions on the grant of parole to the extent otherwise provided by the laws of the State of California.

The Clerk of the Court is to enter final judgment accordingly.

Dated: January 11, 2011.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
United States District Judge
